UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN HUERTA,<br><br>    Plaintiff,<br><br>v.<br><br>AT&T UMBRELLA BENEFIT PLAN NO. 1,<br><br>    Defendant. | Case No.: 3:11-cv-01673-JCS<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR A NEW TRIAL PURSUANT TO RULE 59(a)(2) AND TO AMEND JUDGMENT PURSUANT TO RULE 59(e) [Dkt. No. 84].** |

## I. INTRODUCTION

On October 17, 2012, this Court issued an order in the instant case granting Defendant AT&T Umbrella Benefit Plan No. 1's ("Defendant") motion for summary judgment and denying Plaintiff Juan Huerta's ("Plaintiff") motion for judgment. *See* Dkt. No. 82. Plaintiff has filed a Motion for New Trial Pursuant to Rule 59(a)(2) and to Amend Judgment Pursuant to Rule 59(e) ("Motion"), wherein Plaintiff contends this Court committed clear error in denying Plaintiff's second and third claims for relief. The Court finds this Motion suitable for determination without oral argument pursuant to Local Rule 7-1(b), and hereby vacates the motion hearing scheduled for January 4, 2013, at 9:30a.m. For the reasons stated below, Plaintiff's Motion is DENIED.[1]

## II. BACKGROUND & PROCEDURAL HISTORY

This case arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. Plaintiff challenges Defendant's collection of an overpayment of long-term disability ("LTD") benefits occasioned by Plaintiff's receipt of retroactive Social Security

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

Disability Insurance ("SSDI") benefits. The Court explained the material facts of this case at length in the previous order, and incorporates them here. *See* Dkt. No. 82 at 2-9.

Plaintiff's First Amended Complaint contains three claims for relief, *see* Dkt. No. 31, and the Court's previous order disposed of all three. Plaintiff does not challenge the Court's disposition of his first claim arising under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), through which Plaintiff sought benefits owed to him under the terms of the Disability Plan. The Court interpreted the terms of the Disability Plan--subsection 10.3.2(c) in particular--and held that IDSC[2] is allowed to reduce Plaintiff's LTD benefits by $500 per month in order to recover the $63,288.11 overpayment caused by Plaintiff's receipt of retroactive SSDI benefits. The Court so held despite recognizing an administrative mistake which caused IDSC to first notify Plaintiff of the overpayment almost one year after Plaintiff's receipt of the retroactive award.

Plaintiff's second and third claims for equitable relief--the Court's disposition of which Plaintiff challenges in the instant Motion--arise under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which reads as follows:

> A civil action may be brought … by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan[.]

29 U.S.C.A. § 1132(a)(3).

Plaintiff's second claim for equitable relief sought to enjoin IDSC from reducing Plaintiff's monthly LTD benefits on grounds of Plaintiff's financial hardship. After a lengthy analysis discussing Plaintiff's first claim, the Court reasoned that such equitable relief was not warranted:

> By the clear terms of the Disability Plan, Plaintiff was never entitled to keep the retroactive SSDI award. Moreover, Plaintiff has provided no legal authority for the proposition that even if IDSC had failed to comply with subsection 10.3.2(c), he would be entitled to keep the overpayment. For this reason, the Court also denies Plaintiff's request in the alternative for equitable relief pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

---

[2] "IDSC" stands for AT&T Integrated Disability Service Center. IDSC is the unit of Sedgwick, the third-party claims administrator, which administers claims for disability benefits arising under the Disability Plan.

2

> While the Court sympathizes with the fact Plaintiff was prejudiced by IDSC's inadvertent delay, the Court also recognizes that Plaintiff is not entirely without fault. Plaintiff was informed on multiple occasions that he would not receive duplicate benefits and that it was his responsibility to reimburse IDSC for an overpayment occasioned by a retroactive SSDI award.

Dkt. No. 82 at 18. In the instant Motion, Plaintiff argues this reasoning constitutes "clear error" because the claim for equitable relief "require[s] consideration of whether Plaintiff is entitled to an equitable remedy, such as restitution, waiver, or estoppel." Motion at 5. Plaintiff also argues that it was error for this Court to not consider the Huerta Declaration in adjudicating the equitable claims.[3]

Plaintiff's third claim for relief sought a declaration that Defendant violated ERISA and the terms of the Disability Plan by failing to provide Plaintiff with proper notice and claims procedure, as well as an injunction enjoining Defendant from continuing to do so. Dkt. No. 31 (First Amended Complaint) at 9(c)(1)-(2). In the previous Order, the Court agreed that IDSC's "reduction" of Plaintiff's monthly LTD benefits constituted an "adverse benefit determination" within the meaning of 29 C.F.R. § 2560.503-1(b)(4). Dkt. No. 82 at 10. Accordingly, the Court held that IDSC was obliged to comply with the notification requirements of 29 C.F.R. § 2560.503-1, that IDSC failed to do so, and as a result, failed to accord Plaintiff a proper claims procedure. *Id.* at 11. However, the Court declined to issue an injunction ordering IDSC's future compliance:

> While the Court agrees that IDSC should have provided adequate notice of its administrative review process, ordering IDSC to provide an administrative appeal after this Court's adjudication of the substantive issues will have no effect on Plaintiff's rights. Nor is there any evidence to show that IDSC will continue to fail to adhere to ERISA's notice requirements and appeals procedure. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief … if unaccompanied by any continuing, present adverse effects.") (internal quotations omitted).

Dkt. No. 82 at 11-12. In the present Motion, Plaintiff argues the Court erred in failing to issue a declaratory judgment despite the Court's recognition that IDSC should have issued proper notice

---

[3] Without deciding whether consideration of the Huerta Declaration was required, the Court considers the Huerta Declaration in deciding the instant Motion.

3

of an adverse benefit determination. Plaintiff requests the Court amend its judgment to reflect that Plaintiff prevailed on this issue.

## III. LEGAL STANDARD

Plaintiff brings this Motion under Rule 59(a)(2) and (e) of the Federal Rules of Civil Procedure. Rule 59(a)(2) provides the rules for "Further Action after a Nonjury Trial." Fed.R.Civ.P. 59(a). Because the Court never held a trial, but rather granted summary judgment in favor of Defendant, a request for a "new trial" pursuant to Rule 59(a)(2) is procedurally improper.

Rule 59(e) provides that a court may "alter or amend a judgment." Fed.R.Civ.P. 59(e). Unlike Rule 59(a), a motion for "reconsideration of summary judgment is appropriately brought under … Federal Rule 59(e)." *Taylor v. Knapp*, 871 F.2d 803, 805 (9th Cir. 1989). However, "[a] motion for reconsideration under Rule 59(e) should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed *clear error,* or if there is an intervening change in the controlling law." *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999) (en banc) (per curiam) (internal quotations omitted) (emphasis in original). "[R]econsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Id.* at n. 1 (quoting 11 Charles Alan Wright et al., Federal Practice and Procedure § 2810.1 (2d ed.1995)).

## IV. DISCUSSION

### A. Plaintiff's Second Claim for Relief

Plaintiff argues the Court's denial of his second claim for equitable relief under section 502(a)(3) constitutes "clear error" because the claim "require[s] consideration of whether Plaintiff is entitled to an equitable remedy, such as restitution, waiver, or estoppel." Motion at 5. Plaintiff is incorrect. As a preliminary matter, section 502(a)(3) "does not, after all, authorize 'appropriate equitable relief' *at large*, but only 'appropriate equitable relief' for the purpose of 'redress[ing] any] violations or … enforc[ing] any provisions' of ERISA or an ERISA plan." *Mertens v. Hewitt Associates*, 508 U.S. 248, 253 (1993) (emphasis in original). In the previous order, the Court held that IDSC *did not violate* ERISA or the terms of the Disability Plan by reducing Plaintiff's monthly LTD benefits to recover the overpayment. Dkt. No. 82 at 15-18. Therefore,

4

equitable relief enjoining IDSC from reducing Plaintiff's monthly LTD benefits--Plaintiff's second claim for relief--is improper under § 502(a)(3). *See Mertens*, 508 U.S. at 253.

Moreover, it is quite bold for Plaintiff to accuse this Court of erroneously failing to consider the equitable theories of restitution and waiver when Plaintiff never argued or pled facts supporting these theories in the first place. *See* Dkt. No. 31 (First Amended Complaint) ¶¶ 37-44; Dkt. No 50 (Plaintiff's Motion for Judgment) at 21-25; Dkt. No. 60 (Plaintiff's Response to Defendant's Motion for Summary Judgment) at 7-8, 21-22; Dkt. No. 66 (Plaintiff's Reply in Support of Motion for Judgment) at 12-15. Although Plaintiff argued he could prevail under an estoppel theory in his reply in support of the motion for judgment, he failed to consider (or even cite) an obvious barrier to such relief--that "a beneficiary cannot obtain recovery on the basis of estoppel in the face of contrary, written plan provisions." *Renfro v. Funky Door Long Term Disability Plan*, 686 F.3d 1044, 1054 (9th Cir. 2012). These considerations aside, the Court will now explain why Plaintiff's theories of restitution, waiver and estoppel fail on their merits.

### 1. *Restitution*

Plaintiff argues he is entitled to keep the overpayment under the theory of restitution. This argument makes no sense, however, because restitution is an equitable remedy when there has been unjust enrichment. Given the clear terms of the Disability Plan, there is no indication that Defendant has been unjustly enriched.

To support his restitution theory, Plaintiff cites *Dandurand v. Unum Life Insurance Company of America*, 150 F.Supp.2d 178 (D.Me. 2001) ("*Dandurand*"). In *Dandurand*, the claims administrator miscalculated the plaintiff's LTD benefits by failing to account for the plaintiff's bonus for a period of four years. The sole question before the *Dandurand* court was whether the plan could avail itself of restitution to recover the overpayment caused by the failure to account for the bonus. Aside from the obvious distinction that the question in *Dandurand* was whether the plan--not the plan participant--was entitled to restitution, *Dandurand* is distinguishable on several other grounds.

First, and most importantly, the *Dandurand* court explicitly found that the overpayment "occurred through no fault" of the plaintiff in that case. *Id*. at 186. By contrast, this Court has

5

already stated that Plaintiff was "not entirely without fault" because Plaintiff was informed on numerous occasions--through the LTD Agreement and other reminders--that he was responsible to notify IDSC of any retroactive SSDI award and reimburse IDSC accordingly. AR 475, 1147, 1053-54.

Second, the *Dandurand* court found the provision of the disability plan which had been mistakenly interpreted (and thus caused the miscalculation of the plaintiff's LTD benefits) to be ambiguous. *Id.* at 186. This ambiguity caused four different employees to incorrectly calculate the plaintiff's benefits for a period of four years. By contrast, this Court has already concluded that the terms of the Disability Plan "unambiguously" grant IDSC the power to reduce Plaintiff's LTD benefits to account for a retroactive SSDI award. Dkt. No. 82 at 2-3. The error in this case was not caused by a misinterpretation of the Disability Plan. The LTD Agreement requiring Plaintiff to notify the Disability Plan of any retroactive SSDI award--which Plaintiff failed to do-- is evidence of the IDSC's intent to prevent such errors.

Finally, the *Dandurand* court found the plaintiff "was not placed on notice" of the miscalculation because the overpayment "did not occur in one lump payment that would have put Dandurand on notice that Unum was overpaying him, but occurred in monthly installments over a period of four years." *Id*. at 187. In this case, by contrast, Plaintiff was notified several times prior to receiving the retroactive SSDI award that he would be required to reimburse IDSC for an overpayment. When Plaintiff received a lump sum payment of $63,288.11 from Social Security, he should have known the money was not his to spend.

### 2. *Waiver*

Plaintiff next argues that he is entitled to enjoin the $500 reduction of his monthly LTD benefits through an equitable theory of waiver. "Waiver refers to the voluntary or intentional relinquishment of a known right. It emphasizes the mental attitude of the actor." *Matsuo Yoshida v. Liberty Mut. Ins. Co.*, 240 F.2d 824, 829 (9th Cir. 1957). To support his waiver argument, Plaintiff cites *Burger v. Life Insurance Company of North America*, 103 F.Supp.2d 1344 (N.D. Ga. 2000) ("*Burger*"), which Plaintiff contends is "factually analogous to this case." Motion at 5.

In *Burger*, the claims administrator overpaid the plaintiff for three years by failing to reduce LTD benefits to account for the plaintiff's part-time employment. *Id.* at 1345-46. The *Burger* court found "compelling evidence" that the claims administrator "voluntarily relinquished" its right to reduce the plaintiff's payments because it knew the plaintiff was working part-time for three years but failed to reduce the benefits according to the plan. *Id*. at 1348. The plaintiff in *Burger* "informed" the claims administrator "on several occasions" about his part-time employment, and even forwarded the claims administrator copies of his federal tax income returns. *Id*.

The Court cannot find that Defendant voluntarily or intentionally relinquished its right to collect the overpayment occasioned by Plaintiff's retroactive SSDI award. As a threshold matter, the specific terms of the Disability Plan preclude such a waiver. AR 1229 (section 5.2.2 states that "[f]ailure to apply an offset as soon as it is available *shall not constitute a waiver* of offset rights or otherwise prevent their later exercise.") (emphasis added). But even without section 5.2.2, the Court cannot find that IDSC ever intended to relinquish its right to recover the overpayment because the administrative record is replete with evidence to the contrary. IDSC reminded Plaintiff of his responsibility to notify IDSC in the event he received a retroactive SSDI award and his responsibility to reimburse IDSC accordingly. IDSC's inadvertent delay in notifying Plaintiff about the overpayment simply does not constitute a waiver of its unambiguous right under the Disability Plan to recover the overpayment.

### 3. *Estoppel*

In addition to restitution and waiver, Plaintiff contends he can obtain relief under an estoppel theory. A plan participant can recover benefits under ERISA § 502(a)(3) under an estoppel theory by showing:

> (1) a material misrepresentation; (2) reasonable and detrimental reliance on the representation; (3) extraordinary circumstances; (4) the provisions of the plan at issue are ambiguous, such that reasonable persons could disagree as to their meaning or effect; and (5) the representations must have been made to the beneficiary involving an oral interpretation of the plan.

*Renfro*, 686 F.3d at 1054. "Moreover, a beneficiary cannot obtain recovery on the basis of estoppel in the face of contrary, written plan provisions." *Id.* (internal citations omitted).

Plaintiff's estoppel theory fails on several grounds. Plaintiff contends that "IDSC made material misrepresentations to Mr. Huerta regarding the effect of his receipt of SSDI benefits when it repeatedly communicated with him (verbally and in writing) about his claim between February 2009 and March 2010 without informing him of about the overpayment *it knew to exist*." Reply at 4; Dkt. No. 66 (Reply in Support of Plaintiff's Motion for Judgment) at 17. The Court is not convinced. Failing to inform Plaintiff about the overpayment for almost one year is not a misrepresentation; it is an oversight. IDSC never misrepresented to Plaintiff that despite having received a retroactive SSDI award, IDSC did not intend to collect.

Nor would Plaintiff's reliance on IDSC's failure to mention the overpayment be "reasonable," given the terms of the Disability Plan and Plaintiff's responsibility under the LTD agreement to inform IDSC of the retroactive award and reimburse IDSC accordingly. Moreover, the provisions of the Disability Plan are not "ambiguous," as this Court already held that the terms "unambiguously" give the claims administrator the right to collect the overpayment occasioned by a retroactive SSDI award. Finally, Plaintiff unabashedly argues he is entitled to recover on an estoppel theory without the slightest consideration that such recovery would be "in the face of contrary, written plan provisions." *Renfro*, 686 F.3d at 1054.

*   *   *

In sum, the Court will deny Plaintiff's second claim for equitable relief under § 502(a)(3) for the same reasons the Court articulated in the previous order. The evidence before the Court, including the Huerta Declaration, shows that Plaintiff is not entitled to enjoin IDSC's collection of the overpayment on any equitable theory. As indicated in the Court's previous order, the terms of the Disability Plan unambiguously grant IDSC the authority to collect Plaintiff's retroactive SSDI award, and explicitly preclude a waiver in the event such collection is untimely. AR 1229. Prior to receiving the retroactive SSDI award, Plaintiff was notified on numerous occasions that IDSC would collect the amount deemed to be overpaid as a result of the retroactive SSDI benefits. AR 475, 1147, 1053-54. Even considering IDSC's inadvertent delay in notifying Plaintiff of the overpayment, Plaintiff should have known the retroactive SSDI award was not his

1 to spend. Thus, Plaintiff's current state of financial hardship for having spent the retroactive
2 SSDI award does not persuade the Court that equitable relief is warranted.

### B. Plaintiff's Third Claim for Relief

As a final matter, Plaintiff requests the Court to amend its judgment to reflect that Plaintiff prevailed on the issue of whether Defendant was legally required to provide a proper notice of adverse benefit determination. Specifically, Plaintiff requests a "declaratory judgment" that Defendant violated Title I of ERISA. Reply at 8.

The Declaratory Judgment Act provides that "[i]n a case of actual controversy … any court of the United States … may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. To satisfy the "case-or-controversy" requirement, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).

There is currently no case or controversy regarding Defendant's issuance of proper notice of an adverse benefit determination. Although IDSC should have issued proper notice when it reduced Plaintiff's LTD benefits to recover the overpayment, "[p]ast exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010) *cert. denied*, 131 S. Ct. 503 (2010) (denying the plaintiff declaratory relief after a Fourth Amendment violation for lack of standing). There is no indication IDSC will ever be required to issue another notice of adverse benefit determination to Plaintiff, thus Plaintiff is no longer subject to a real and immediate threat of injury.

The Court adequately explained this barrier to Plaintiff's third claim by citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983), which Plaintiff apparently ignores in his present Motion. In *Lyons*, the Supreme Court denied the plaintiff an injunction for failure to satisfy Article III's case-or-controversy requirement. *Id.* at 101. Although *Lyons* entailed a request for an injunction, a present case-or-controversy is also a prerequisite to obtain declaratory relief. *See*

28 U.S.C. § 2201; *MedImmune*, 549 U.S. at 127; *Mayfield*, 599 F.3d at 970. Thus, the reasoning is the same, and the Court holds there is no ongoing injury in this case. Plaintiff has made no showing that IDSC will continue to violate ERISA's notification requirements, and Plaintiff's speculative and conclusory allegations are insufficient.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion is DENIED.

IT IS SO ORDERED.

Dated: December 17, 2012

_____
Joseph C. Spero
United States Magistrate Judge